# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF PUERTO RICO

Alfredo Aponte Diaz, et al,
   Plaintiffs,

       v.                                    Civil No. 98-1917 (HL)

Navieras Puerto Rico, Inc.; Holt Hauling
& Warehousing Systems, Inc.; NPR
Holding Corporation.
   Defendants.



## OPINION AND ORDER

    Before the Court is Defendants Navieras Puerto Rico ("NPR"), Holt Hauling &

Warehousing Systems and NPR Holding Corp.'s motion for summary judgment.[1]  Plaintiffs

are Alfredo Aponte Diaz ("Aponte"), his wife Emma Diaz Molina, the conjugal partnership

composed by them, and their daughter Frances Aponte Diaz.  Aponte held the position of

Buyer at NPR.  Plaintiffs claim that Navieras terminated Aponte in violation of the Age

Discrimination in Employment Act ("ADEA")[2] the Americans with Disabilities Act of 1990

("ADA")[3], Title VII and the Constitutions of the United States and Puerto Rico.  Plaintiffs also

bring state law claims.

---

    [1]Holt Hauling and Warehousing Systems Inc., and NPR Holding Corp. are the
holding companies of Navieras Puerto Rico (NPR).  Throughout the opinion the Court will
refer to defendants as "NPR".

    [2] 29 U.S.C.A. §§ 621 - 634 (West 1985 & Supp. 1996).

    [3] 42 U.S.C.A. §§ 12101 - 12213 (West 1995).





Civil No. 98-1917 (HL)                    2

The Court reviews the record in the light most favorable to Plaintiffs and draws all reasonable inferences in their favor. *See LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 841 (1st Cir. 1993). During his 27 year tenure at NPR and its corporate predecessors[4] Aponte labored in different departments, including Operations, Accounting, Pricing & Tariffs, Administration, and Purchasing.[5] Aponte was commended for his work on various occasions and was never disciplined throughout his career.[6] In May of 1990, Aponte requested a transfer due to a hearing impairment.[7] Aponte was transferred to the position of Supervisor Retail Audit in the Pricing and Tarriffs Department, where he earned a higher salary and benefits.[8] The position of Supervisor Retail Audit was eliminated in 1991.[9] After the elimination of his position, Aponte was offered a position in Tampa, Florida, which he declined.[10] Rather, Aponte requested the position of Buyer in the Purchasing Department in San Juan.[11] Although the salary of Buyer was lower than that of Supervisor Retail Audit, Aponte's request was

---

[4] In 1974 Navieras, a public corporation, acquired the assets of Sea-Land Service in Puerto Rico and contracted with Puerto Rico Marine Management Inc. ("PRMMI") for the administration of operations. In 1994, the government of Puerto Rico sold the assets of Navieras to NPR, a private corporation. Docket.11, exhibit. 3, p.10-11, 74-75.

[5] Docket 11, exhibit 17;

[6] Docket 21, exhibit E.

[7] Docket 21, exhibit E;  Docket 11, exhibit 4

[8] Docket 11, exhibits 4 & 5.

[9] Docket 21, exhibit E.

[10] Docket 21, exhibit E.

[11] Docket 21, exhibit E; Docket 11, exhibit 6.

Civil No. 98-1917 (HL)                    3

granted and his salary remained unchanged.[12]  Aponte's responsibilities as Buyer were, in

essence, to purchase materials for all the departments in Navieras, approve and negotiate

prices, manage inventory, maintain cost statistics and supervise an assistant Buyer and

secretary.[13] On March 4, 1996, NPR notified Aponte in writing that pursuant to a restructuring

plan the position of Buyer would be eliminated and that he would be laid off effective March

15, 1996.[14]  At the time of his termination Aponte was fifty-six (56) years old.[15]  After his

termination, Aponte received a pension from NPR based on the term of years he served.[16]

In its motion for summary judgment, NPR argues that Aponte's discharge was non-

discriminatory because it was the result of a major restructuring undertaken by NPR pursuant

to a new business philosophy.[17]  NPR claims that when it acquired the assets of Navieras,

there was a downturn in the market and the company decided to maximize its resources.[18]

Pursuant to a strategic plan, NPR implemented a company wide reduction in work force.[19]

NPR laid off employees throughout all its locations, including Puerto Rico where over fifty

---

[12] Docket 21, exhibit 6.

[13] Docket 21, exhibit 6, exhibit E.

[14] Docket 21, exhibit 1.

[15] Docket 21, exhibit E.

[16] Docket 21, exhibit E.

[17] Docket 11, exhibit 3.

[18] Docket 11, exhibit 3.

[19] Docket 11, exhibit 10.

Civil No. 98-1917 (HL)                    4

(50) employees were terminated.[20]

Plaintiffs have opposed the motion for summary judgment. For the reasons set forth below, the Court grants NPR's motion for summary judgment.

## DISCUSSION

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has satisfied this requirement, the nonmoving party has the burden of presenting any facts that demonstrate a genuine issue for trial. Fed. R. Civ. P. 56(e); *LeBlanc*, 6 F.3d at 841. The nonmovant must do more than show "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). An issue is genuine when, based on the evidence, a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512.

---

[20] Docket 11, exhibit 10.

Civil No. 98-1917 (HL)                    5

*ADEA Claim*

Aponte claims that NPR dismissed him in violation of the ADEA. This statute makes it unlawful for an employer to discharge an employee because of his age. 29 U.S.C.A. § 623(a)(1). In a claim for wrongful discharge, the plaintiff bears the ultimate burden of demonstrating that he would not have been terminated but for his age. *Vega v. Kodak Caribbean, Ltd.*, 3 F.3d 476, 478 (1st Cir. 1993). The analytical framework for ADEA discrimination cases is interchangeable with the framework for Title VII cases. *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 535 n.9 (1st Cir. 1996). Under this analysis, when there is no direct evidence of age discrimination, the court must apply the burden shifting standard of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Mulero-Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 673 (1st Cir. 1996); *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 95 (1st Cir. 1996). Under the *McDonnell Douglas* standard, a plaintiff must first establish a prima facie case of discrimination by establishing that (1) he was within a protected class--in this case, that he was over 40; (2) his work performance met his employer's legitimate expectations; (3) suffered an adverse employment action; and (4) was replaced by someone with similar skills and qualifications. *Mulero-Rodriguez*, 98 F.3d at 673; *Pages-Cahue v. Iberia Lineas Aereas de Espana*, 82 F.3d 533, 536 (1st Cir. 1996); *Sanchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 719 (1st Cir. 1994). The burden to make out a prima facie case is not a particularly onerous one. *Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1091 (1st Cir. 1995); *Sanchez*, 37 F.3d at 719; *Greenberg v. Union Camp Corp.*, 48

Civil No. 98-1917 (HL)                    6

F.3d 22, 26 (1ˢᵗ Cir. 1995).

Once a plaintiff has successfully made out a prima facie case, a presumption of discrimination is created. *Ayala-Gerena*, 95 F.3d at 95; *Woodman*, 51 F.3d at 1091. A burden of production then shifts to the employer to show a legitimate, nondiscriminatory reason for the plaintiff's termination. *Ayala-Gerena*, 95 F.3d at 95; *Vega*, 3 F.3d at 479. To satisfy its burden, the employer need only adduce admissible evidence that would allow a fact finder to rationally conclude that the adverse employment decision was not motivated by a discriminatory animus. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 257, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981); *LeBlanc*, 6 F.3d at 845; *Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1335-36 (1st Cir. 1988). If the employer successfully meets this burden of production, the inference of discrimination arising from the plaintiff's prima facie case drops out of the case. *Woodman*, 51 F.3d at 1091; *Sanchez*, 37 F.3d at 720. In order to survive a motion for summary judgment, the plaintiff must then adduce evidence to show that (1) his employer's articulated reason for discharging the plaintiff was a mere pretext and (2) his employer intentionally discriminated against him. *Mulero-Rodriguez*, 98 F.3d at 674; *Ayala-Gerena*, 95 F.3d at 95. Because a prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability in employment discrimination case, the plaintiff need not always introduce additional, independent evidence of discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133,___, 120 S.Ct.2097, 2109, 147 L.Ed. 2d 105 (2000). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the

Civil No. 98-1917 (HL)                    7

trier of fact to conclude that the employer unlawfully discriminated." *Id.*

In the case before the Court, Aponte has shown that he was over forty at the time of his termination;[21] that his work performance met NPR's legitimate expectations;[22] and that NPR nevertheless terminated him.[23]  Plaintiff has established the first three elements of a prima facie case.  To meet the fourth element of the prima facie case a plaintiff must show that his employer either replaced him with, or sought as a replacement, a person who had roughly equivalent job skills. *Mulero-Rodriguez*, 98 F.3d at 673;  *Sanchez*, 37 F.3d at 719. An employer replaces an employee by hiring or reassigning someone "to perform the plaintiff's duties." *Le Blanc v. Great American Ins. Co.,* 6 F.3d 836, 846 (1st Cir. 1993)(quoting *Barnes v. GenCorp. Inc.*, 896 F.2d 1457, 1465 (6th Cir.), cert. denied, 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171(1990)).  Thus, the inquiry focuses on who performs the plaintiff's duties once he is terminated. *See Flebotte v. Dow Jones*, 51 F.Supp.2d 36, 40 (D.P.R.1999); *Shenker v. Lockheed Sanders Inc.*, 919 F.Supp. 55, 60 (D.Mass. 1996).  An employee holding a different title or position may be considered a replacement by being reassigned to perform most of plaintiff's duties.[24]  In addition to showing that he was replaced,

---

[21] Docket no. 21, exhibits E.

[22] Docket no. 21, exhibits E.

[23] Docket no. 21, exhibits E.

[24]    In *Carreras v. Baxter Healthcare Corporation of Puerto Rico, Inc.*, 955 F.Supp. 14, 17 (D.P.R. 1997), the Court explained:
Although [the other employee] did not have the same title and did not assume one hundred percent of Plaintiff's duties, Plaintiff . . . provided
(continued...)

Civil No. 98-1917 (HL)                8

Aponte must show that the person performing his duties has job skills roughly equivalent to

his. *Mulero Rodriguez*, 98 F.3d at 673; *Sanchez*, 37 F.3d at 719.

The only evidence in the record regarding this fourth element is a sworn statement by

Aponte declaring:

> Approximately 85% of the duties of Buyer that I withheld (sic) at the
> moment of my dismissal were transferred to the Maintenance
> Department of the NPR, Inc. in Puerto Rico and assigned to Dania
> Alonso, a person with less antiquity who was later raised to
> Administrative Manager of Maintenance. She was under 40 years of
> age and had only been working for the company for seven (7) years at
> the time of my dismissal. The rest of my duties were assigned to
> employees in other work units with less antiquity.[25]

This statement is wanting in two respects. First, it lacks information regarding Dania

Alonso's job skills and whether they were roughly equivalent to those of Aponte. Second,

Aponte fails to explain how he knows that his duties were, for the most part, reassigned to

Dania Alonso. An affidavit used to offer or support a motion for summary judgment must be

made on personal knowledge and must show that the affiant was competent to testify to the

matters stated. Fed.R.Civ. P. 5(e); *Vargas v. Puerto Rican-American Ins. Co.*, 52 F. Supp.2d

305, 311 (D.P.R. 1999).

---

[24](...continued)
evidence that she in effect replaced him by being reassigned to perform
nearly all of his duties. The Court hesitates to require mechanical
replacement of one individual into another's slot with the exact same
title and duties. Such an approach would be overly formalistic and
would give employers the opportunity to make minor, essentially
insignificant alterations to a position in order to evade the law.

[25] Docket no. 21, exhibit E.

Civil No. 98-1917 (HL)                    9

Notwithstanding the sketchy evidence proffered by Aponte, because a plaintiff's burden in proving a prima facie case is light the Court will assume that Dania Alonso's skills were roughly equivalent of those of Aponte's and that Aponte's statement is made on personal knowledge. Accordingly, the Court will proceed to the second phase of the burden-shifting framework and examine whether NPR has met its burden of producing a legitimate, nondiscriminatory reason for Aponte's termination. *See Ayala-Gerena*, 95 F.3d at 95.

NPR has submitted the sworn statement of Jack Bauman, General Manager of Corporate Human Resources NPR, Inc.[26] Mr. Bauman stated that after NPR bought Navieras, NPR conducted a major restructuring of operations and closed offices in New Orleans, Louisiana, Baltimore, Maryland, Charleston and South Carolina.[27] Mr. Bauman declared that "as a result of this change in business philosophy, . . . it was determined that better prices could be obtained by negotiating on a corporate wide volume basis from the corporate headquarters in Edison, New Jersey."[28] Hence, the Purchasing Department in San Juan was totally eliminated.[29] Aponte acknowledged that all the employees of the Purchasing Department in San Juan were terminated,[30] with the exception of a union member who exercised "bumping" rights pursuant to the collective bargaining agreement. The job

_____

[26] Docket no. 11, exhibit 8.

[27] Id.

[28] Id.

[29] Docket 11, exhibit 8.

[30] Docket 11, exhibit 1.

Civil No. 98-1917 (HL)                    10

functions of Buyer, Aponte's position, were redistributed amongst various divisions, including

the Maintenance Department in Puerto Rico and the Purchasing Department in Edison, New

Jersey.[31]  NPR also eliminated three (3) out of seven (7) positions in the Purchasing

Department in Edison, New Jersey[32], as well as many other positions throughout the

company.[33]  The Court finds that this evidence shows NPR had a legitimate business reason

for Aponte's termination- a reduction in workforce due to a business restructuring.  Therefore,

NPR has satisfied its burden of production.

Plaintiff now has the burden to produce evidence showing that NPR's articulated

reason was a mere pretext and NPR intentionally discriminated against Aponte.  *See Mulero-*

*Rodriguez*, 98 F.3d at 674; *Ayala-Gerena*, 95 F.3d at 95.  Throughout its muddled motion in

opposition, Aponte refers to several facts to shoulder his burden of persuasion.  *See St. Mary's*

*Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Serrano*

*Cruz DFI Puerto Rico, Inc.*, 109 F.3d 23, 25 (1st Cir. 1997).  Most of these statements are

baseless and, thus, insufficient to create a genuine issue of fact as to pretext and

discriminatory animus.  *Grant's Dairy v. Commissioner of Maine Department of Agriculure*,

232 F.3d 8, 23 (1st Cir. 2000); *Medina Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st

Cir. 1990); Fed.R.Civ.P. 56(c).  For example, Aponte asserts most of the people dismissed by

NPR were over forty (40) years old.  NPR has brought forth evidence showing that before the

---

[31] Docket 11, exhibit 3, exhibit 7.

[32] Docket 11, exhibit 8.

[33] Docket 11, exh. 10.

Civil No. 98-1917 (HL)                    11

March 1996 layoff, eighteen percent (18%) of NPR's work force in Puerto Rico was under forty (40) years of age, and eighty two percent (82%) was forty (40) or older.[34]  So a higher dismissal rate among those employees over 40 is consonant with the composition of the workforce and does not necessarily raise an inference of discrimination.  There is additional evidence showing that after the reorganization nineteen percent (19%) of the employees who were not laid off in San Juan were younger than forty (40) and eighty one percent (81%) of those employees who were not laid off were forty (40) or older.[35]  Hence, the composition of the workforce remained unchanged contrary to Aponte's claim.  The Court finds this evidence supports an inference of equal not disparate treatment for employees 40 or older.

        Aponte also contends discrimination may be inferred from the following allegations: that several positions became available before and after his dismissal but were not offered to Aponte; that employees with less seniority continued to work as Buyers in other locations; that the Puerto Rico office had no bearing on the decision to dismiss employees.  Aponte also questions NPR's alleged need to reduce the workforce.  Yet the record is devoid of evidence in support of these claims, but for Aponte's conclusory statements.  Aponte did not provide evidence regarding the availability of other positions, the qualifications required for those positions or about the employees who occupied those positions.  The Court is thus unable to determine whether the other employees were similarly situated and whether the comparison is legally relevant.  See *Alvarez Fonseca v. Pepsi Cola Bottling Company*, 152 F.3d 17, 24

---

[34] Docket 11, exh. 9.

[35] Docket 11, exh. 9.

Civil No. 98-1917 (HL)                    12

(D.P.R.1998).  In addition, whether or not Aponte agrees with NPR's decision, it is settled

that a Court should not second guess a non-discriminatory business decision to institute a

reduction in workforce. *Leblanc v. Great American Ins.* Co., 6 F.3d 836, 846 (1st Cir. 1993)*;

Mesnick v. General Electric Company*, 950 F.2d 816, 825 (1st Cir. 1991).  The Court finds

that Aponte's "conclusory allegations, improbable inferences, and unsupported speculation

are entitled to no weight." *Grants Dairy, supra*, 232 F3d 23.

In sum, there being no evidence to indicate mendacity with regard to NPR's reason

for terminating Aponte or that NPR's stated reason is pretextual, the presumption arising

from Aponte's prima facie case vanishes. *See Medina-Munoz*, 896 F.2d at 9; *Freeman*,

865 F.2d at 1336; *Menard*, 848 F.2d at 287.  Aponte has failed to establish a genuine issue

of material fact as to an age-based discriminatory intent towards him.  Accordingly, the

Court grants NPR's motion for summary judgment on Aponte's ADEA claim.


*ADA Claim*

Plaintiff also brings a claim under the Americans Disabilities Act.  The ADA

prohibits an employer from discriminating against a "qualified individual with a disability"

because of the individual's disability.  42 U.S.C.A. § 12112(a).  A plaintiff claiming

disability discrimination under the ADA must prove three things: (1) that he was a

qualified individual with a disability;  (2) that with or without reasonable accommodation

he was able to perform the essential functions of his employment;  and (3) that his

employer terminated him in whole or in part because he was disabled. *Oliveras Sifre v.*

Civil No. 98-1917 (HL)                    13

*Puerto Rico Dep't of Health*, 214 F.3d 23, 25 (1ˢᵗ Cir. 2000); *Jacques v. Clean-Up Group, Inc.*, 96 F.3d 506, 511 (1st Cir. 1996) (quoting *Katz v. City Metal Co.*, 87 F.3d 26, 30 (1st Cir. 1996)). The ADA defines the term 'qualified individual with a disability' as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.A. § 12111(8).

NPR did not contest the first two elements of the ADA prima facie case in its summary judgment motion, thus only the third element - that NPR terminated Aponte in whole or in part because he was disabled - is at issue. NPR points out, and Aponte acknowledges, that he was accommodated by a transfer to another position when his hearing condition deteriorated.[36] Shortly after Aponte took time off because of a heart condition. Thereafter, Aponte did not request additional accommodations.[37]

NPR has put forth evidence showing that Aponte and many others were dismissed for a legitimate business reason.[38] NPR argues that plaintiff failed to show his alleged disability played a role in his termination.

Aponte offers two snippets of evidence to prove NPR's discriminatory animus. First, Aponte argues that NPR did not terminate another 'similarly situated' employee who

---

[36]Docket 11, Exh. 7, l, pgs. 101-104.

[37] Docket 11, Exh. 7, l, pgs. 101-104.

[38] See discussion of Aponte's ADEA claim.

Civil No. 98-1917 (HL)                    14

suffered from a heart condition.[39]  This argument is counterintuitive.  The fact that another

employee with a similar ailment was not discharged does not favor plaintiff's ADA claim,

if anything, it works against him.  Moreover, the comparison is unavailing because the

non-discharged employee held a position of higher hierarchy at another location.[40]  For a

comparison to be legally relevant both employees must be 'similarly situated'.  *Cardona

Jimenez v. Bancomercio de Puerto Rico*, 174 F.3d 36, 42 (1st Cir. 1999)("To be 'similarly

situated' for the purpose of our discrimination jurisprudence, the two individuals or

situations must be similar 'in all relevant aspects'"); *Dartmouth Review v. Dartmouth

College*, 889 F.2d 13, 19 (1st Cir.1989); *Cardona v. United Parcel Service*, 79 F.Supp.2d

35, 42. (D.P.R.2000)

        Aponte's second contention is that since his position was eliminated he should have

been offered another position in San Juan or elsewhere.  In support of his argument

Aponte states that two sales representatives were hired shortly after his dismissal and that

other positions became available in Edison, New Jersey.  Aponte's argument fails for

various reasons.  The ADA requires that employers provide reasonable accommodation to

disabled employees to enable them to perform the essential functions of their job.  This

may be achieved by modifying the work environment.  An alternative accommodation

strategy is reassignment to another position.  42 U.S.C. § 12111(9)(B).  *See Feliciano v.

State of Rhode Island*, 160 F.3d 780, 783 (1st Cir.1998); *Criado v. IBM Corp.*, 145 F.3d

---

[39] Docket 11, Exh. 7.

[40] Docket 11, Exh. 7.

Civil No. 98-1917 (HL)                    15

437, 443 (1st Cir.1998). So when a disabled employee cannot be reasonably

accommodated in his current position, the employer has a duty to transfer him to a vacant

position where he may perform the essential functions with or without reasonable

accommodation unless it constitutes an undue burden. 42 U.S.C.A. 12112(b)(5)(A).

The present case is different because Aponte was performing the essential functions

of his position. His termination was caused by the elimination of his position, nothing

more. Aponte contends NPR had a duty under ADA to transfer him to a different position

instead of terminating him. The Court disagrees. The Court does "not read the ADA as

requiring affirmative action in favor of individuals with disabilities, in the sense of

requiring disabled persons be given priority in hiring or reassignment over those who are

not disabled. It prohibits employment discrimination against qualified individuals with

disabilities, no more and no less." *Daugherty v. City of El Paso*, 56 F.3d 695, 700 (5th Cir.

1995). Based on this reasoning, the Court holds that the ADA does not require an

employer to transfer or reassign a disabled employee when his position is eliminated for

non-discriminatory reasons.[41] Such a requirement would reach beyond the objective of

discrimination jurisprudence by immunizing disabled employees from legitimate

dismissals.

Assuming, arguendo, that Aponte had been entitled to a transfer once his position

was eliminated, there is no other information in the record about the allegedly vacant

_____

Civil No. 98-1917 (HL)                     16

positions. It is unclear from the scant record whether Aponte had the experience and

education required to qualify for the those positions.  Thus, Aponte failed to raise a

genuine issue of fact as to the availability of positions that were within his ability to

perform.

In sum, the record lacks evidence showing Aponte was a target for termination

because of his physical impairments.   There is uncontroverted evidence showing that a

company wide reorganization led to the elimination of the Purchasing Division in Puerto

Rico, as well as many layoffs in other locations.  The position of Buyer in San Juan was

eliminated and NPR had no duty under ADA to transfer Aponte to another position.  There

being no probative evidence in the record showing NPR's stated reason for the reduction

in workforce masked a discriminatory animus based on Aponte's disability, the ADA

claim must be dismissed.


*National Origin Discrimination Claim*

Aponte also claims national origin discrimination under Title VII.  When there is no

direct proof of national origin discrimination as in this case the Court applies the

McDonnell Douglas burden shifting framework.  *See Dominguez-Cruz v. Suttle Caribe,*

*Inc.,* 202 F.3d 424, 429 (1ˢᵗ Cir.2000); *Nater v. Riley,* 114 F.Supp.2d 17,27 (D.P.R. 2000).

As previously discussed, in an employment termination case the plaintiff has the burden of

establishing a prima facie case of national origin discrimination.  *See Texas Dept. of*

*Community Affairs v. Burdine*, 450 U.S. 248, 255 n. 8, 101 S.Ct. 1089, 67 L.Ed.2d 201

Civil No. 98-1917 (HL)                    17

(1981). The plaintiff must show that (1) he was within a protected class (2) he was

performing his job at a level that met the employer's legitimate expectations; (2) he was

nevertheless dismissed; and (4) the employer sought someone of roughly equivalent

qualifications to perform substantially the same work after his departure. *See Mulero-*

*Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 673 (1st Cir. 1996). It is uncontested that Aponte is

Puerto Rican, and thus within the protected class, and that he was removed from his

position as Buyer in NPR. There is also evidence that Aponte was commended for his

work. Defendant has not disputed this evidence. Nonetheless, there is no evidence in the

record regarding the qualifications of Dania Alonso, the employee who was assigned most

of Aponte's functions. Therefore, Aponte failed to prove the fourth element of his prima

facie case.

In the alternative, the Court finds that even if plaintiff had properly plead the

elements of a prima facie case of national origin discrimination, defendant would still be

entitled to summary judgement. Once plaintiff has established a prima facie case, the

presumption of discrimination vanishes if defendant articulates a legitimate

nondiscriminatory reason for discharging the plaintiff. *See McDonnel Douglas*, 411 U.S.

at 802, 93 S.Ct. 1817; *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 899 (1st Cir.

1988). Defendant has met its burden of production in this case by showing that plaintiff's

discharge was prompted by a business restructuring. Plaintiff has not shown NPR's stated

reason to be a pretext nor is there any evidence in the record that raises a reasonable

inference of national origin discrimination. Aponte's main contention is that NPR did not

Civil No. 98-1917 (HL)                  18

dismiss other employees of different national origin.[42] He claims that it "appears" that

others were not dismissed because they were Americans.[43] It is uncontested, however, that

many Americans were terminated in the reduction of workforce and that many Puerto

Ricans still work at NPR.[44] Aponte's conclusory assertion, without more, is not sufficient

for a factfinder to reasonably conclude NPR's stated reason is pretextual and that the true

reason was discriminatory animus.

In short, NPR proffered a legitimate justification for Aponte's termination; namely

a business restructuring. Plaintiff has come forward with no evidence of pretext or

intentional discrimination. The Court hereby dismisses the claim of national origin

discrimination.

### Constitutional Claims

Finally, Aponte brings claims under the United States Constitution and Puerto Rico

Constitution. His complaint is non-specific as to what constitutional rights were violated,

but the Court will construe his claim under the Equal Protection Clause. "The central

purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of

official conduct discriminating on the basis of race." *Washington v. Davis*, 426 US 229,

---

[42] Dkt. 11, exh. 7.

[43] Dkt. 11, exh. 7. Aponte alleges Charlie Mercy, John Matron, Robert Jonas and others were transferred to Puerto Rico and not terminated. He acknowledges, however, that these employees were not similarly situated and held positions of higher hierarchy.

[44] Dkt. 11, exh. 10.

Civil No. 98-1917 (HL)                    19

239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976).   A threshold requirement of plaintiff's

constitutional claims is a demonstration that in denying plaintiff's constitutional rights, the

defendant's conduct constituted state action.  *See Lugar v. Edmondson Oil Co.*, 457 U.S.

922, 929, 102 S.Ct. 2744, 2749-50, 73 L.Ed.2d 482 (1982); *United States v. International

Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir.1991).

 Plaintiff's constitutional argument fails because the requisite state action is absent.

NPR was a private actor, not a state actor.  Although NPR bought the assets of Navieras

from the Puerto Rico government, at the time of Aponte's termination NPR operated as a

private corporation that received no federal or state funding.[45]  Therefore, Aponte's

constitutional claims are unavailing.


*State Claims*

 In addition to the federal claims, Aponte brought state law claims pursuant to this

court's supplemental jurisdiction.  The state claims were also litigated in a similar action

filed in the Puerto Rico Court of First Instance. In the state action, Aponte claimed

violation of Law 100, Puerto Rico's anti-discrimination statute; Law 44, Puerto Rico's

anti-disability discrimination statute; Article 1802 of the Civil Code and Law 80 which

prohibits dismissals without just cause.  Aponte's main contention was discriminatory

termination.  Between that case and the present one there is complete identity of parties,

---

[45] Docket 11, Statement of Material Facts ¶ 4.

Civil No. 98-1917 (HL)                      20

things, and causes.[46]

In an order dated March 2, 2000, the Puerto Rico Court of First Instance entered

summary judgment in favor of NPR.[47]  On July 13, 2000, the Puerto Rico Court of

Appeals affirmed.[48]  Plaintiff did not seek review from the Puerto Rico Supreme Court

within the established time for appeal.[49]  Thus, judgment became final and unappealable.

*See Cruz v. Melecio*, 204 F.3d 14, 20 (under Puerto Rico law a judgment becomes final

and unappealable when no further appeal from it can be taken).

This Court must give a Puerto Rico court judgment the full faith and credit that it

would receive in Puerto Rico's local court system.  *See Felix Davis v. Vieques Air Link*,

892 F.2d 1122, 1124 (1st Cir. 1990).  Under Puerto Rico law, for a prior judgment to have

a res judicata effect on a second proceeding, the earlier judgment must have been final and

appealable; it must have been rendered by a court which had jurisdiction to hear the

matter; and the decision must have been on the merits.  *Bonafant Solis v. American Eagle*,

97 JTS 86, 1142 (1997); *Bolker v. Tribunal Superior y Sosa, Interventores*, 82 D.P.R. 785,

792-93, 798 (1961); *Felix Davis*, 892 F.2d at 1124; *Boateng v. Interamerican University*,

36 F.Supp.2d 60, 62 (D.P.R. 1998).  In the present case, the four factors are met.  Aponte

has once litigated his state claims and failed.  None of the exceptions to the application of

---

[46] Dkts. 28, 40.

[47] Dkt. 28.

[48] Dck. 44.

[49] Dck. 44.

Civil No. 98-1917 (HL)                 21

res judicata apply.  Therefore, the Court dismisses the state law claims on res judicata

grounds.  *See Guadarrama v. U.S. Department of Housing and Urban Development,* 74

F.Supp.2d 127, 139 (D.P.R. 1999).

WHEREFORE, the Court hereby grants NPR's motion for summary judgment and

DISMISSES plaintiff's ADEA, ADA, Title VII and constitutional claims with prejudice.

State law claims are also DISMISSED with prejudice.


**IT IS SO ORDERED.**

San Juan, Puerto Rico, January **23**, 2001.

HECTOR M. LAFFITTE
Chief District Judge